Percival E. Foerderer v. Commissioner.
Foerderer v. Commissioner
Docket No. 109076.
United States Tax Court
1943 Tax Ct. Memo LEXIS 428; 1 T.C.M. (CCH) 677; T.C.M. (RIA) 43102; February 27, 1943
*428 (1) Petitioner created a trust naming himself as sole trustee with broad powers of management including power to pledge securities of the trust estate for the purpose of borrowing money to make advances to a beneficiary to be charged against future income and providing that the income was to be paid to his wife for life and upon her death to her children for petitioner's life. Large advances, in excess of the income of the trust, were made during various years to petitioner's wife as a beneficiary. Held, that petitioner is taxable with the income of the trust for the taxable year under section 22 (a) of the Revenue Act of 1938. (2) Attorney and accountant fees paid by petitioner during the taxable year to recover overpaid income taxes with interest thereon held deductible under section 23 (a) of the Internal Revenue Code as amended by Section 121 (a) (2) of the Revenue Act of 1942 to the extent such fees were allocable to the recovery of the interest. J. S. Y. Ivins, Esq., for the petitioner. Brooks Fullerton, Esq., for the respondent. TYSON Memorandum Findings of Fact and Opinion Respondent determined a deficiency in income tax for the calendar year 1939 against petitioner in *429 the amount of $6,763.92. There are only two issues. The first issue is whether income from a trust of which petitioner was grantor is taxable to petitioner. The second issue concerns the deductibility of certain accountant and attorney fees paid by petitioner in recovering overpaid income taxes. The proceeding has been submitted upon the pleadings, stipulations of facts, and oral and documentary evidence. Findings of Fact Two stipulations of facts, numbered 1 and 2, respectively, have been submitted. In stipulation number 2 the parties reserved the right to object to the consideration of any fact therein stipulated on the ground of irrelevance and immateriality. The petitioner made such objection as to all the facts contained in stipulation number 2. We received stipulation number 2 in evidence with the understanding that irrelevant and immaterial facts therein would be disregarded. Deeming the facts, set out in stipulation number 2 as material and relevant we adopt the facts as set forth in both stipulations as a part of our findings of fact, but incorporate herein only such of these facts as we deem essential to consideration of the issues involved. Petitioner is an individual *430 whose office is at 123 South Broad Street, Philadelphia, Pennsylvania. He filed his Federal income tax return for the calendar year 1939 with the collector of internal revenue, First District of Pennsylvania, Philadelphia, Pennsylvania. On July 1, 1924, Petitioner created an irrevocable trust naming himself as sole trustee and transferring certain securities to the trust. The trust instrument provided that the income thereof was to be paid to petitioner's wife, Ethel Brown Foerderer, for her life, and upon her death and until petitioner's death, to the child or children of his wife or the issue of such child or children per stirpes. Upon the death of petitioner and his wife the corpus was to be distributed as petitioner's wife should by will appoint and in default of such appointment to their descendants then living per stirpes. If petitioner's wife died intestate leaving no descendants, the corpus was to be distributed to persons entitled to petitioner's estate under the intestate laws of his domicile. By the trust instrument petitioner gave to himself as trustee power: to hold the securities in trust or sell them or any other property comprising the corpus of the trust *431 estate at public or private sale for such prices and on such terms as he deemed fit; to make other investments in real or personal property in addition to legal investments as he deemed advisable without liability for loss if made in good faith; to join in any plan of reorganizations of corporations whose securities were held by the trust; to make exchanges of securities or any other property held by the trust; to borrow money for any purpose incident to the administration of the trust or for making advances to a beneficiary to be charged against future income; and to pledge any securities in the trust estate as collateral for such borrowings. The trust instrument further provided that if the beneficiary for life receiving advances should die before such advances had been recouped from accruing income, the advances were to be charged against corpus. Petitioner reserved the right to appoint and remove an associate or successor trustee. Petitioner and his wife had one child living at the time of the creation of the trust. Two other children have been born since that time, one in 1926 and the other in 1927. Petitioner has been the sole trustee of the trust since its creation. All *432 checks for dividends on stocks and interest on bonds constituting the corpus of the trust and all other funds of the trust are now and at all times since the creation of the trust have been paid to Percival E. Foerderer and deposited in bank accounts entitled "Percival E. Foerderer Special", and all disbursements by the trustee have been made by checks against these accounts. The first of these accounts was opened on July 22, 1924. Brokerage accounts carried in the name of "Percival E. Foerderer Special" were used solely for the purchase or sale of securities for the trust. All disbursements by the trustee have been made by check prepared by a Mr. Elmer Strunk, an employee, and signed "Percival E. Foerderer, Special." Checks of the trustee drawn to the order of Ethel Foerderer were endorsed by her, or by the above-mentioned employee at her direction, and in the latter case were deposited by the employee in one of her several bank accounts. Withdrawals from her bank accounts were made only by her personal check. An office has been maintained by the estate of petitioner's father, Robert H. Foerderer Estate, Inc., at 123 Broad Street, Philadelphia, Pennsylvania. Others having their *433 business headquarters in that office were Percival E. Foerderer, Ethel Brown Foerderer, petitioner's mother, his sister and brother-in-law, the Percival E. Foerderer trust in question, a Percival E. Foerderer trust created in 1932, and certain corporations of which Percival E. Foerderer was an officer. A Mr. Platt, and later Elmer Strunk, attended to the business and personal matters of the individuals, trusts, and corporations at that office. On April 25, 1924, Ethel Brown Foerderer, petitioner's wife, made application to five life insurance companies for insurance aggregating $250,000, on the life of petitioner, and policies were issued on these applications to petitioner's wife as primary beneficiary. Petitioner signed the policies in acquiescing in the issuance of the policies on his life. The initial premiums on these policies aggregated $7,678.50. On June 19, 1924, Ethel Brown Foerderer borrowed $7,755.50 from R. H. Foerderer Estate, Inc., and gave her note therefor. She used this sum to pay the initial insurance premiums and interest thereon. At the time this insurance was taken out petitioner was carrying a substantial amount of other insurance on his own life. On December *434 1, 1924, petitioner as trustee by a trustee's check paid with interest the note which Ethel Brown Foerderer had given to R. H. Foerderer Estate, Inc. and charged the payment to her account on the books of the trust. In 1927 and 1928 Ethel Brown Foerderer made application with three insurance companies for additional insurance, aggregating $450,000, on the life of petitioner. Such insurance was issued with petitioner's wife as primary beneficiary thereunder. The annual premiums thereon totalled $14,772. In accordance with the insurance applications, premium notices with respect to all insurance taken out by Ethel Brown Foerderer on petitioner's life were sent to 123 South Broad Street, Philadelphia, Pennsylvania. Elmer Strunk notified Ethel Brown Foerderer of the receipt of these notices and, in the instances in which the premiums were paid out of trust income, would prepare checks for the premiums on the account known as "Percival E. Foerderer Special" at the Girard Trust Company, obtain petitioner's signature thereon, endorse the checks on behalf of Ethel Brown Foerderer with a rubber stamp and deposit them in her personal account at the Girard Trust Company. Ethel Brown Foerderer *435 would then sign checks drawn on her personal account for the payment of the insurance premiums and Elmer Strunk would see to their proper application. In no instance were insurance premiums paid directly from the trust, but all such payments were made by Ethel Brown Foerderer through personal checks drawn on her bank account. In many instances Ethel Brown Foerderer received checks from the trust in the exact amounts necessary to pay the annual insurance premiums. Until 1936 petitioner as trustee made payments (including advances of $105,571.62) from the trust to Ethel Brown Foerderer largely in excess of all insurance premiums paid by her. The total of such premiums between 1924 and 1936 was $167,675.54. Her total income from the trust, excluding advances but including capital gains, from 1924 to 1936 was $151,398.85. Her total income, including capital gains, other than from the trust from 1924 to 1936 was $97,046.42. No payments of premiums were made in cash to the insurance companies after 1936, the payments being carried under additional loans or by election of options. Between February 1925 and 1936 petitioner, individually, made numerous loans to the trust ranging in amounts *436 from $608 to $41,597.43, and aggregating a total of $94,505.43. All of these loans were repaid without interest. On August 7, 1925, petitioner, individually, borrowed $25,000 from the trust and in 1927 repaid such amount without interest. On November 26, 1934, Ethel Brown Foerderer borrowed $2500 from the trust, which loan was repaid with interest in 1935. Elmer Strunk had authority to borrow cash from the account of any of the parties or concerns operating in the office at 123 Broad Street and use it for another of such parties or concerns; and there was continuous intra-office borrowing between the corporate, trust, and individual accounts. Petitioner, in his discretion, shifted funds from the account of one entity to another as he thought was required by the business exigencies of the entity to which the funds were shifted. On each of two occasions when income of the trust in excess of $18,000 was received, it was deposited to the account of Percival E. Foerderer, Inc. and book entries made to reflect a loan from the trust to that corporation. Frequently purchases and sales made by the corporation, trust, and individuals, including the trust in question, would be cleared through *437 Percival E. Foerderer, Inc. bank account for the reason that the bank account of that corporation could be drawn upon by checks signed by Elmer Strunk during petitioner's absence. All stocks belonging to the trust and other accounts in the office were in the name of petitioner, individually because he acted as nominee for all such accounts. Entries were made in the books of a particular account at the time of the purchase of the stock so as to identify the stock as belonging to that account. In 1927 Ethel Brown Foerderer purchased a summer residence at Seal Harbor, Maine, known as "Chasellas", for $34,650. She was the grantee in the deeds by which the property and the furnishings therein were acquired. The purchase price was paid by check drawn on the account of "Percival E. Foerderer Special" and was charged on the books of the trustee to "Seal Harbor Property". The cost of improvements upon the property, furnishings, taxes, repairs, a boat for use at the property, and the repair of furnishings and equipment were also paid by checks drawn on the account, "Percival E. Foerderer Special", and charged as advances to Ethel Brown Foerderer and during the period from 1927 through 1940 *438 the cost of these items amounted to $10,662.23. "Chasellas" was occupied as a summer residence by members of petitioner's family during the summer seasons of 1928 to 1938, inclusive, but not thereafter. It was offered for rent in the summer of 1938 and has continuously since then been offered for rent. Petitioner spent part of the summer season with his family when they were at "Chasellas". For some time prior to September 1934 and at all times after October 1936, petitioner regularly furnished to his wife $3,100 a month for household expenses. In thirteen months of the period from September 1934 to October 1936, petitioner, individually, made monthly payments of $3,100 to his wife for household expenses. In ten months of the period from September 1934 to October 1936 petitioner, as trustee, made similar payments of $3,100. During three months of the latter period part of monthly payments of $3,100 for household expenses was paid by petitioner, individually, and part by petitioner, as trustee. The reason why some of these payments were made by petitioner from the trust was that he, individually, did not have available the money to make the payments. On August 31, 1927, petitioner *439 made an entry on his own individual books recording a transfer to the trust of 700 shares of common stock of Aluminum Company of America which had been purchased by him in January 1927 for the sum of $44,688.21. On November 27, 1927, petitioner, as trustee, sold 700 shares of Aluminum Company of America stock for $83,709.50. On November 27, 1927, the trustee paid to Percival E. Foerderer the sum of $44,688.21, designated on the trustee's books as "Amount due for purchase of 700 shares of Aluminum Co. of America". Petitioner, as trustee, reported and paid the Federal income tax on the gain on the sale. Petitioner, in administering the trust as trustee, made advances to his wife in excess of the income thereby causing an impairment of the corpus of the trust. This impairment steadily increased from $5,070.54 at the end of 1928 to $120,761.59 at the end of 1936. By the end of 1939 the impairment was reduced to $108,396.68. In determining the deficiency the respondent included in the income of the petitioner the amount of $8,916.49 as ordinary income of the 1924 trust and the amount of $3,067.48 as short term gain of that trust. In 1939 petitioner paid accountant and attorney fees *440 for services in recovering overpaid income taxes. These fees were determined by a percentage of the recovery of tax and interest. The interest recovered was 34.17 percent of the total recovery. This interest was included in petitioner's 1939 taxable income in respondent's determination. The total of the fees was $2,943.85 and 34.17 percent thereof is $1,006.05. Petitioner on his 1939 income tax return deducted as business expense the entire $2,943.85, which was wholly disallowed by respondent in determining the deficiency in controversy. Opinion TYSON, Judge: The first issue is whether the 1939 income from the trust established by petitioner on July 1, 1924 for the benefit of his wife and contingent beneficiaries is taxable to petitioner in 1939. Petitioner contends that the income is not taxable to him under either sections 166, 167, or 22 (a) of the Revenue Act of 1938. Respondent's principal, and only definite, contention is that petitioner remained, in reality, the owner of the trust corpus and therefore is taxable on the income therefrom under section 22 (a) of the Revenue Act of 1938. The test to be applied in determining whether the grantor is taxable under section 22 (a) *441 of the Revenue Act of 1938 is, as was stated by the Supreme Court in , as follows: That issue is whether the grantor after the trust has been established may still be treated, under this statutory scheme as the owner of the corpus. * * * In absence of more precise standards or guides supplied by statute or appropriate regulations, the answer to that question must depend on an analysis of the terms of the trust and all the circumstances attendant on its creation and operation. And where the grantor is the trustee and the beneficiaries are members of his family group, special scrutiny of the arrangement is necessary lest what is in reality but one economic unit be multiplied into two or more by devices which, though valid under state law, are not conclusive so far as section 22 (a) is concerned. In the instant case provisions in the trust instrument itself, when considered in connection with the facts surrounding the creation and operation of the trust, lead us to the inevitable conclusion that petitioner retained such a substantial ownership in the trust corpus as to render him taxable on the income therefrom here *442 involved under section 22 (a), supra. The terms of the trust instrument leading to this conclusion are: the income from the trust was reallocated within petitioner's "intimate family group"; petitioner was the sole trustee; petitioner, as trustee, had broad powers of management; and petitioner, as trustee, could pledge the securities of the trust for the purpose of borrowing money to make advances to a beneficiary to be charged against future income. The broad powers of management reposed in petitioner, as trustee, when "coupled" with his further power to pledge corpus of the trust for the purpose of borrowing money to make advances to a beneficiary are, we think, vitally significant. See . The trust instrument does not limit the extent to which corpus could be pledged and, in view of the provision of that instrument that advances to the life beneficiary, petitioner's wife, if not recouped before the death of the life beneficiary, would be a charge against corpus, we think that petitioner could have made advances to his wife in amounts which might approximate, if not equal, the value of the corpus of *443 the trust by borrowing and pledging trust securities for the loan. In such a case, if his wife died, the remaindermen would receive a greatly impaired interest, or no interest, in the trust. After the death of his wife, when petitioner's three children, if living, would become entitled to the income from the trust, petitioner, as trustee, could also borrow money for the purpose of making advances to any one or two of his three children, to the exclusion of the other or others, by pledging the trust securities without limit as security for such borrowings and thus impair, and possibly destroy, the interest of the other child or children in the trust. In effect, then, petitioner, under the terms of the trust instrument, had the power to shift beneficial interests in the trust. We consider this power in petitioner, a man of large means, as an important factor in concluding, as we have, that petitioner substantially remained the owner of the trust for the purpose of section 22 (a), supra. That petitioner construed the trust instrument as giving him power, as trustee, to make advances to his wife is established by the fact that at the end of the taxable year the trust corpus had *444 been impaired to the extent of $108,396.68 by such advances. Had petitioner's wife died at that time there would have resulted a shift of interests in the trust fund from the contingent beneficiaries to the wife as life beneficiary. The power in the grantor to shift interests in the trust from one beneficiary to another is deemed important by the courts. In , affirming and involving a trust whereby the grantor retained the power to change both the beneficiaries and the proportion of the income payable to any beneficiary, except that such changes could not be for the benefit or use of herself, the Circuit Court of Appeals for the Third Circuit said: We think that a settor who is a person of means and who can control the spending of a fund, which she has set up, in every respect except spending it for herself is sufficiently the "owner" of the fund to make its income taxable to her under section 22 (a). Also, in , the Circuit Court of Appeals for the Second Circuit said the "outstanding fact" in that case was that *445 the grantor of a trust had reserved the power to change, in any respect whatsoever, the provisions of the trust relating to "the disposition of the income and principal of the trust estate or the separate shares into which the same may be divided, and to change any beneficial interest" under the trust, although he could not by such changes benefit himself. In so holding the court stated: During his life, he has entire control of the sale and investment of the corpus, in whole or in part, and the voting power of any stock now or later constituting that corpus. When to such control there is coupled the power, until his death, freely to sprinkle the income about among any beneficiaries he may select (as if he were playing a hose), it is impossible to conclude, in the light of the recent decisions of the Supreme Court, that the income is not taxable to him. See . Cf. . Further indicia of petitioner's substantial ownership of the trust fund are found in some of the actual uses to which principal and income thereof were applied and are confirmatory of our conclusion. *446 We are justified in considering such further indicia in the light of the test quoted above from Helvering v. Clifford, with reference to which test the Tenth Circuit Court of Appeals in , said: In the determination of this question all facts and circumstances, which bear upon the creation and operation of this trust become material, as well as the terms and provisions of the trust instrument itself. See also . Until 1936 payments of large amounts derived from the trust by petitioner's wife, as the life beneficiary, were made by her on premiums for insurance, which insurance aggregated $750,000, on petitioner's life. Thereafter, and through the taxable year, the policies carried themselves. Moreover, prior to 1936, income and advances to petitioner's wife were used on occasion to pay household expenses of petitioner and his family and also for the purchase and upkeep of a summer home in Seal Harbor, Maine, occupied by petitioner and family. All of these payments directly, or indirectly, benefited petitioner. We hold petitioner taxable on *447 the income of the trust here involved under section 22 (a) of the Revenue Act of 1938. In view of our above holding, we need not decide whether petitioner is taxable under sections 166 or 167 of the Revenue Act of 1938 and, in fact, a contention to that effect does not seem to have been specifically made by the respondent. The second issue presents the question of whether or not accountant and attorney fees paid by petitioner during the taxable year for services rendered in recovering overpaid income taxes and interest thereon are deductible. Section 121 (a) (2) of the Revenue Act of 1942, which is retroactively applicable to taxable years beginning after December 31, 1938, provides that "in the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income" are deductible for income tax purposes.while the accountant and attorney fees in question paid to recover the income taxes themselves are not deductible under this section, the fees allocable to the collection of interest on the income tax recovery *448 are deductible. 34.17 percent of such recovery constituted interest. Therefore, 34.17 percent of the total of the accountant and attorney fees, or $1,006.05, is a deductible expense, and this is the full extent of the deduction claimed by petitioner on brief. Decision will be entered under Rule 50.